Price, J.
The defendant R. Stanley Rhoads was indicted by the grand jury of Franklin county at the January term for the year 1907, and charged with the crime of giving a bribe to Charles B. Burr, while he, Burr, was a member of the board of public service of the city of Columbus. The accused entered a plea of not guilty, and on trial to a jury was acquitted, but during the progress of the trial, several controversies arose over the admission of evidence, and over the rulings of the trial court as to the right of the accused and his counsel to inspect the *404 stenographic statement of evidence taken before the grand jury that found the indictment; also over the demand of such counsel for an inspection of a stenographic report of an interview or private inquisition had by George Marshall, then city solicitor of the city of Columbus, with one Nelson Cannon, who was afterwards called and examined by the state as a witness in the trial of Rhoads, and who g'ave evidence tending to his conviction. This demand was made in connection with his cross-examination, The court made certain orders, relating to the right to such inspections, sustaining the demand, to which counsel for the state excepted, and notwithstanding the acquittal of Rhoads, a bill of exceptions was taken and allowed, which contains the several points decided by the trial court, and enough of the evidence relating to such decisions to show their materiality in the case. On motion leave was obtained to file the bill in this court. This practice is authorized and regulated by Sections 7305, 7306 and 7307, Revised Statutes. Section 7308, Revised Statutes, provides that, “the judgment of the court in the case in which the bill was taken shall not be reversed nor in any manner affected; but the decision of the supreme court shall determine the law to govern in any similar case.” By this course of procedure, the decisions complained of have been brought into the record and heard on oral argument, and also considered on extended briefs of counsel.
Three decisions of the trial court have been selected for our investigation, and after we state each of them with its appropriate settings, we *405 will discuss them as a whole, because the exceptions must stand or fall as tested by the same law.
First. The inquisition conducted by Solicitor Marshall seems to have occurred on or about February 18, 1907, at his office. How Nelson Cannon happened to be at this office, we are not informed, and we need not inquire. It was a personal, private inquiry, and did not assume any official character. It was not a court proceeding in any sense, and when the disclosures were taken by the stenographer and written out, it was not officially filed in any court or office, for there is no provision of law for the custody or lodgment of such a paper.
We are informed by the record sufficiently to state, that Cannon in this private inquiry made disclosures relative to several bribery transactions, and the complicity of various persons involved in the charges of bribery of the members of the board of public service in connection with a contract for the re-surfacing of part of East Broad street. The Cannon statement was delivered by the city solicitor to the prosecuting attorney for his use in the prosecution of the bribery cases of which there were several, including the case against Rhoads now under consideration. At the trial of Rhoads, the prosecuting attorney had with him a transcript of the Marshall inquiry. .Cannon was a witness for the state and testified concerning the acts and statements of Rhoads respecting the alleged bribery of Burr. He was cross-examined as to what he had told Solicitor Marshall in the interview, but witness seemed unable to give the specific questions by Marshall *406 and the answers thereto. On re-examination, the prosecuting attorney, using the said transcript of what occurred at the inquiry conducted by Marshall, to get the questions and answers put and made, propounded to witness several of such questions. This transcript was not read to the jury, but used by the prosecutor to reproduce the questions and answers, no doubt to refresh the memory of the witness as to what did occur on that occasion. This course of re-examination was contested, and many ruling's made not now important. Finally the counsel for Rhoads requested the prosecuting attorney to let them have the transcript. This was refused and then application was made to the court to compel its delivery, and the court ordered the prosecutor to deliver to the counsel for Rhoads all that part of the transcript regarding which Cannon had been examined. The state excepted and still excepts.
Second. Henry Maetzel was a witness called by Rhoads and he testified in his behalf. He had been a witness before the grand jury that indicted Rhoads, on which indictment he was being tried. On cross-examination, Maetzel was asked several questions by the prosecuting attorney as to statements he had made as a witness before the grand jury which was investigating the Rhoads case and claimed to be at variance with his evidence in chief. In conducting the cross-examination. the prosecuting attorney had in his possession an unsigned stenographic report of the evidence given by Maetzel as a witness before the grand jury and was using the same as a memorandum to aid in such cross-examination.
*407 The counsel for Rhoads asked for the possession and inspection of the transcript, and on the refusal of the counsel for the state, the court was moved to order the prosecutor to deliver it as requested. The court ordered the transcript of all that part of the testimony of Maetzel given by him before the grand jury in respect to which he had been cross-examined, to. be delivered to the defense. The counsel for the state protested and refused to comply with the order, and the court assessed a fine of $100 for contempt of court. Exception was taken. Subsequently the counsel for the state complied with the order and the assessment of fine was vacated. Before these orders were made for the inspection, the prosecuting attorney had submitted to the court for its inspection and' information a transcript of the testimony before the grand jury referred to, and also a copy of inquisition of Cannon conducted by Solicitor Marshall.
Third. The defendant Rhoads testified in his own behalf, fie had also testified before the grand jury that indicted him, having appeared there voluntárily after asking and obtaining permission of the prosecuting attorney to make such appearance. He was cross-examined relative to his testimony before the grand jury. The prosecuting attorney did not use the transcript of the grand jury evidence as memoranda in conducting the cross-examination, but framed his questions with the aid of the notes made from the transcript. On objection of the accused, the court ruled that using such notes was an evasion of its rulings and opinions, and on request of counsel for ac *408 cused, the court ordered the prosecuting attorney to turn over to them the transcript of the testimony of Rhoads before the grand jury. This order was excepted to, but the transcript was delivered accordingly and used by counsel and client before his re-direct examination.
In considering what we may denominate as the Marshall-Cannon inquisition or interview, it would seem quite sufficient to observe again that the transcript of the same which had been delivered to the prosecuting attorney by Marshall, and was being referred to as an aid in the examination of Cannon, a witness at the trial for the state, had no public characteristic whatever. It was not an official or public record or document, and had not been filed with anyone as such. The city solicitor .no doubt had gained some intimation from some source of what Cannon knew and might disclose as to the corrupt practices of some of the city officials. He turned the inquisition or interview, which had been taken steno-graphically and afterwards typewritten, over to the prosecuting officer of the proper court in which to institute a thorough legal inquiry with a view to indictment and prosecution of such officials, should the evidence warrant that action.
This transcript was not evidence, and of itself could never become such under any circumstances of which we can have any present conception, certainly not independent evidence. If the witness Cannon had been using the transcript from which to testify, or to refresh and aid memory in giving testimony on the issue between the state and Rhoads, it might have been entirely proper and *409 justifiable on the part of counsel for the accused to ask on cross-examination the opportunity to inspect the paper being referred to. by the witness. In that situation, the witness may be interrogated as to the character of the paper being used or referred to, and it became a subject of examination in connection with the cross-examination.
But that was not the situation we are reviewing. The prosecuting attorney, in preparing for an important trial, may in the seclusion of his study prepare notes of the facts which he expects to present at the trial; the names of witnesses and sketches of the evidence of each, and the order in which he desires to examine them. In such memoranda he may note precautions to be taken on this or that stage of the trial. Has the court authority to compel counsel, on request of his adversary to deliver this prepared memoranda for his inspection? Could such a practice of search and seizure be justified by.the law, or any reasonable rule of procedure? If so, an attorney’s private papers and his written data — his private notes made to aid memory on the trial — are no longer safe or sacred, and their possession may be ordered given over to one who has no legal claim to or upon them. Such an order would very much resemble the order under review. We, cannot accord to one accused of crime what could not be awarded to the law-abiding citizen in a court of justice.
The trial court erred in making the order complained of and exception thereto is sustained.
*410 Our next subjects for consideration are the transcripts of evidence given before the grand jury by Henry Maetzel and the defendant Rhoads. As before stated Rhoads asked and obtained permission to go before the grand jury and his appearance there was voluntary.
Some preliminary considerations are appropriate here in order to a full understanding of what will follow. What is the source of the transcripts of the evidence before the grand jury? Before the days of official stenographers, the. grand jury might make one of their number a clerk for the purpose of having minutes of the proceedings. This was not required by the statute, but wás a matter of convenience in the discretion of the grand jury. With or without the service of a stenographer, the prosecuting attorney may take such notes of the evidence as he desires to assist him in the prosecution if an indictment should be found. These would be his own personal and private memoranda. By the provisions of Section 7195, Revised Statutes, touching the privileges of the prosecuting attorney, we see that he may interrogate witnesses when he or the grand jury deem it necessary. The official stenographer of the county “shall, at the request of the prosecuting attorney, take shorthand notes of the testimony and furnish a transcript of the same to the prosecuting attorney, and to no other person, but such stenographer shall withdraw from the jury room before the jurors begin to express their views, or give their votes on any matter before them. Such stenographer shall take an oath to be administered by the court after the grand jurors are sworn, *411 imposing an obligation of secrecy upon- such stenographer to not disclose any testimony taken down or heard except to the jury, or to the prosecutor, unless called upon in a court of justice to make disclosures.” The prosecutor, under his oath of office and a proper sense of official duty and propriety is also expected to observe the rule of secrecy. He and the stenographer and the witness being examined are the only persons allowed by law to be present in the jury room during its investigations.
While at this point, it is well to notice the law concerning the organization of the 'grand jury. Section 7190, Revised Statutes, provides that when it is impaneled, the court shall appoint one of the number foreman. The next section prescribes his oath as follows: “Saving yourself and fellow jurors, you as foreman of this grand inquest, shall diligently inquire and true presentment make, of all such matters and things as shall be given you in charge, or otherwise come to your knowledge touching the present service; the counsel of the state, your own and your fellows, you shall keep secret, unless called on in a court of justice to make disclosures; and you shall present no person through malice,” etc. After this oath of the foreman, comes that of his fellows, to-wit: “The same oath which A. B. your foreman hath now taken before you on his part, you and each of you, shall well and truly observe and keep on your respective parts.”
We assume that both Maetzel and the. defendant Rhoads, respectively, gave evidence before the jury after it was so organized, and that the *412 official stenographer took shorthand notes of their testimony, and further, that he furnished the prosecuting attorney with a transcript of the same at his request as required by the statute quoted. The transcript lawfully passed into the possession of the prosecutor, and he received it impressed with the seal of secrecy, and he is the only custodian mentioned, for there is no provision, as there is in some states, that it be ' filed with the clerk of the court. It does not become a part of the files of the case if an indictment is found, and there is no provision, authorizing its inspection by any person other than the prosecuting attorney. It is not constituted evidence in the case for any purpose. The proceedings before the grand inquest is not a trial. As yet it has no adverse parties before it, and the person whose conduct is being investigated has no right to appear there except by permission, and then not as a party, but as a voluntary witness. He cannot take his attorney with him before the inquest, nor has he a right to interview grand jurors touching what is\ said or transpires there. Therefore, the grand jury room is a secret chamber where, independent of fear, favor and affection, and unmoved by malice, hatred or ill-will, charges against persons may be investigated and indictments presented, if the facts warrant such presentment. Where then, does one indicted obtain his right to inspect the testimony given at such inquest, or the transcript of such testimony? , If it is answered, that in a case where the right is asserted, there was no arrest and hearing before a magistrate preliminary to the meeting of the *413 grand jury, and therefore the nature of the accusation and the names of witnesses to support it could not be known to the accused, we reply, that under our system of laws adopted to regulate criminal proceedings and the rulings of the court, the indictment is required to allege in clear terms the offense or crime with which he is charged. As held in Dillingham v. State, 5 Ohio St., 280, the indictment must aver all the material facts which it is necessary to prove to produce a conviction, and with such reasonable certainty as to advise the accused what he may expect to meet o'n the trial. Under our practice, Section 7244, Revised Statutes, the accused ’ must be furnished with a copy of the indictment at least one day before he can be required to plead. And as to witnesses against him, the list will appear upon the proper record kept by the clerk to which the accused and his counsel have access.
It appears that the rights of accused persons are thus safeguarded, and they are not forced to trial unaware of what may be developed.
With this, we recur to the direct question respecting the right to inspect the transcripts in the possession of the prosecuting attorney. As before remarked, they are not evidence in and of themselves, and never can be, except under certain conditions, and then they are not evidence, but may be used by the prosecuting attorney merely as reference memoranda in laying the foundation for showing that a witness on the trial testified at variance with his testimony before the grand jury. These shorthand notes taken by the stenographer in the grand jury room are not signed *414 by the witnesses, nor is the transcript of the same. Hence they are not evidence. If we need concurring authority, we find some in State v. Ostrander, 18 Ia., 435. In that case the opinion of the court was rendered by Dillon, J., of whom all lawyers have heard, for he adorned the supreme bench of Iowa at that time. One of the questions in the case was the right to introduce at the trial minutes of the grand jury. The syllabus on that subject is: “The minutes of a witness’ evidence before the grand jury cannot be introduced on the trial for the purpose of impeaching him, without giving him an opportunity to deny their correctness, or state what he did testify to before the grand jury. When it is claimed that there is a conflict between the evidence of a witness before the grand jury and his evidence before a traverse jury, his attention must be drawn to his former testimony, and the foundation for his impeachment laid in the usual and regular manner.”
In course of the opinion, on page 455, the court says: “On the trial, the defendant offered to read to the jury the minutes of the testimony taken before the grand jury, for the purpose of showing that the witnesses had made different and contradictory statements from those made before the court on the trial, and for the purpose of making the said minutes evidence. * * * For the same purposes, the defendant offered to read in evidence the notice served by the district attorney under Section 4786, Revised Statutes, upon the defendant, of the introduction of the testimony of Sarah Sawyer, to prove the facts stated in the notice. The court excluded both of these items *415 of evidence. The right to read in evidence the notice is destitute of plausibility. There is more color for claiming under the revision (Sections 4624-4629, etc.,) that the minutes of the testimony taken before the grand jury might be used as evidence for some purposes and in some events. In the case at bar, the minutes were offered by the defendant as independent evidence in his'own favor. For this purpose they were incompetent. This testimony is taken ex parte It cannot be used by the state against him. 'Minutes’ only of the testimony are required to be taken. It would be unjust towards the witness to hold that these minute, could be used to contradict him without giving the witness an opportunity to deny their correctness before the trial jury, or to state to them what he did testify to before the grand jury.” Then follows the language of the syllabus.
In the State v. Hayden, 45 Ia., 11, it is ruled, that “the minutes of evidence given before the grand jury, or that submitted on preliminary examination, are not admissible upon the trial for the purpose of impeaching the witness.” And. on pages 13 and 14 the court gives the reasons for the ruling. Such minutes are not independent evidence, yet the court say, on page 15, “excluding the written minutes or substance of the evidence from being introduced, does not prevent an impeachment. The grand jury may be required by the court to disclose the testimony of a witness examined before them,” etc. The court so held, notwithstanding we find on examination of the statutes of Iowa as to grand jury proceedings, *416 that the minutes taken of testimony before the grand jury in that state are required to be filed with the clerk of the court and attached to the indictment. See Sections 5257-8-9 of code of 1897; and we think from a cursory examination of prior statutes and the tone of the decisions above quoted, there was a similar provision when State v. Ostrander, supra, and State v. Hayden, supra, were decided.
If such minutes or report of the grand jury testimony could be considered as evidence, our statutes and rules of practice prescribe the method to obtain its inspection, and the method is not a “short order” of the court at. or before the trial, that the prosecuting attorney deliver it to the defendant or his counsel. By Section 7289, except as otherwise provided, “the provisions of the code of civil • procedure relative to compelling' the attendance and testimony of witnesses, their examination, and the administering of oaths and affirmations, and proceedings for contempt to enforce the remedies and protect the rights of parties, shall extend to criminal cases, so far as in their nature applicable.” If the grand jury transcript is evidence, independent evidence, notwithstanding the cases first cited herein, and if the provisions of the civil code as to the inspection of documents, etc., can be extended to criminal cases, we may turn to Sections 5290, 5291 and 5292, Revised Statutes, as the guide. Section 5290 provides, “either party or his attorney, may also demand of the adverse party an inspection and copy, or permission to take a copy, of a book, paper, or document in his possession, or under his control, *417 containing evidence relating to the merits of the action or defense, which demand shall be in writing, and shall specify the book, etc. If this is refused, the court or judge, may on motion and on notice, order the party in possession to give the other an inspection and copy or permission to take a copy of such book, paper or document, and on failure to comply with such order, the court may exclude the paper or document from being given in evidence, or if wanted as evidence by the party applying, may direct the jury to presume it to be such as the party, by affidavit alleges it to be * * * Section 5291 provides for a master to make the inspections in certain events. If these provisions do not extend to criminal cases, then we find no statute for such inspection, copy, etc., pertaining to a criminal case. But if they do apply to the criminal practice, the paper or document of which inspection and copy are desired, must be such as contain evidence relating to the merits of the action or defense. We repeat, that the transcript of the testimony given before the grand jury is not evidence, and never can be, except under exceptional conditions which we do not now recognize. Therefore the provisions of the civil code could not be invoked to gain an inspection or copy of -such a transcript.
In addition to the foregoing decided cases, we cite a few covering the subject generally, and which hold against the right asserted by Rhoads and his counsel. There are many s’uch authorities. Except in states where statutory provisions control to the contrary (and these are very rare) the authorities are remarkably uniform.
*418 In Hofler v. The State, 16 Ark., 534, it is held that, “on the trial of an indictment for assault with intent to murder, the counsel for the prisoner has no right to inspect the minutes of the testimony taken before the grand .jury who found the indictment.” According to the practice in that state, it is the duty of the grand jury to preserve the minutes of their proceedings and of the testimony given before them, which shall be delivered to the attorney for the state. This is much like our statute. At the trial a motion was made to permit counsel for the prisoner to inspect the minutes of the testimony taken before the grand jury and. which was delivered to the attorney for the state. The motion was refused, and the supreme court in that case affirmed that ruling and said on page 535-6: “The indictment, a copy of which he was entitled to, advised him of the nature and cause of the accusation against him. This.he had a right under our bill of rights, to be informed of; but he was not entitled to demand an exhibit of the testimony by which the state expected, at the trial, to sustain this accusation.”
In Merrick v. The State, 63 Ind., 328, it is held: “The prosecuting attorney cannot be compelled to furnish the defendant with a copy of the evidence given against him before the grand jury in finding the indictment.” In that case a stenographer acting under the statutes had taken shorthand notes of the evidence, as' was done in the case before us.
In Cannon v. The People, 141 Ill., 270, the supreme court held: “A person charged with the crime of murder is not entitled to the minutes *419 of the evidence taken before the grand jury, before or at the time of the trial, and there is no error in the court’s refusing to require the state’s attorney to furnish defendant’s counsel with the same.” On page 276, speaking to this point the court say: “Numerous errors are assigned. The first is, the refusal of the court to require state’s attorney to furnish the defendant’s counsel with the minutes of the testimony taken before the grand jury. We have been referred to no authority sustaining the practice insisted upon. Indeed the practice in this state has been uniformly the reverse.” That case was decided' in May, 1892.
One of the leading cases on the question before us is Havenor v. State, 125 Wis., 444, and was decided in 1905. The following points are made in the syllabus:
(1) “The minutes of the clerk of a grand jury of their proceedings kept under the provisions of chapter 90, laws of 1903, are not a public record open to the inspection of all persons.
(2) “The record of the proceedings of a grand jury is secret, and such secrecy must be maintained and kept inviolate within the bounds prescribed by the statutes and the decisions of the supreme court.
(3) “One accused of a crime is not entitled to an inspection of the records of the grand jury, in so far as they relate to the testimony given by him before the grand jury concerning the transaction involved upon his trial.
(4) “One accused of crime is not entitled to the inspection of the records of a grand jury, either before or at his trial, for the purpose of *420 preparation for trial, or for laying the foundation for the impeachment of witnesses whose testimony may have been different on the trial from that-given before the grand jury.
(5) “The records of a grand jury proceedings as kept by the official stenographic reporter, are not official statements which in themselves constitute proof of the acts thus reported, but are memoranda made by the official in the course of his official duties, and.can only be used in evidence when the official can testify that at or about the time the records were made he knew their contents and the accuracy thereof.
(6) “Such records may, however, when proper, be used either to aid the witness in his present recollection or in his past recollection of their contents.”
The third proposition specially fits the refusal of the demand of inspection of evidence given by Rhoads before the grand jury in his case. The opinion cites other cases which we need not notice here, but they support one or more of the above propositions.
Many other cases of like import are collated’ in the brief of exceptor.
The counsel defending against the exceptions cite some cases decided by courts of New York,_ but, as we remember, none determined by the court of appeals. The statutes of that state respecting grand jury proceedings materially differ from ours. The duties of the stenographer before the grand jury are like the duties imposed here, with the addition, that when he has delivered the stenographic report of the evidence to the district *421 attorney, he “shall not permit any other person to take a copy of the same, or of any portion thereof, nor to read the same nor any portion thereof, except upon a written order of the court duly made after hearing of the said district attorney. All of the said original minutes shall be kept in the custody of said district attorney, and neither the same nor a copy of the same or of any portion of the same shall be taken from the office of said district attorney, excepting as above provided.” This statute is quoted in In re Montgomery, appellate division of supreme court of New York, found in 110 N. Y. Supp., 793. It seems that in the cases where the inferior courts of that state indulged the accused in his motion for inspection, it was as a general rule, for an inspection relating to his contemplated attack on the validity of the indictment, or to aid him in procuring its dismissal; or to obtain names of witnesses for the prosecution, and we find no case where such inspection was ordered by the court on or before the trial, in order to aid the defendant in preparing for trial on the general issue — a plea of not guilty.
Clark, J., in the case last referred to, laid down the following proposition: “An examination of the minutes of the grand jury cannot be had for the purpose of assisting defendant in his preparation for the trial or of putting the state’s testimony in the hands of defendant, and the sole purpose for which such examination may be had is to enable defendant to move to set aside the indictment on the ground that it is not properly found, indorsed and presented, or that an improper *422 person was present during the session of the grand jury, or where his- constitutional rights have been invaded; and such examination is not a matter of right and does not depend upon whether there had been a preliminary examination, but depends in each case upon the determination by the court to which the application is made that such examination is necessary to enable defendant to move to dismiss the indictment upon the grounds provided, and in such case the motion should be granted.” The court there cites and reviews the various decisions in that state and the right to such inspection and confines it to the limit stated. To this extent it is an authority in this case, and it is interesting as giving the rise and progress of the disposition to seek knowledge of what transpired in the grand jury room and how the different inferior courts regarded it.
The case of Eighmy v. The People, 79 N. Y., 546, cited against the exceptions, shows that when the case was moved for trial, the prisoner’s counsel, before the jury was empaneled, moved the court to order the district attorney to disclose what evidence was produced before the grand jury, and whether any other evidence was produced, save such as had been furnished the prisoner, with -a view of moving to quash the indictment, on the ground that there was not sufficient evidence before the grand jury to justify it. The motion was denied by the trial court and this was affirmed, the reviewing court stating, that granting or refusing the motion was a matter of discretion — discretionary where the *423 purpose was the quashing of the indictment. Our canvass of the authorities has been carefully made, and we find no important case where such a motion has been granted in order that the inspection might be used on the trial or in preparation for the same.
In the case at hand, the quashing or dismissing of the indictment was not contemplated in the .use of the grand jury testimony, had it been turned over to the defense. No particular purpose or use was disclosed to the trial court in the application for the inspection. Yet the court made the broad order of delivery.
We are not disposed to follow the New York practice even as limited by the decisions of the inferior courts of that state, for it is easily gathered from the various cases in which the question arose, that embarrassing conditions followed the enforcement of such a rule of practice, which' it seems, received its' particular impetus in the case of People v. Molineux, 27 Misc. Rep., 60. While certain advantages may accrue to a defendant by disclosing the state’s testimony, there are higher considerations to be weighed — the public peace and welfare. As said in Thompson & Merriam on Juries, latter part of Section 623: “If the state had a right to a new trial, or any means of vacating verdicts of acquittal obtained by fraud or perjury, the reasons in justification of a rule which exposes the state’s evidence to the accused in advance of the trial would be more clear.” On page 662 (Section 608) of the . same authors, it is said concerning disclosure of the state’s .evidence in a preliminary examination: “Besides *424 the advantages which we have enumerated as accruing to the accused from a preliminary examination, there is another and very considerable advantage which is the necessary result of this proceeding. The prosecution is obliged to disclose the evidence to the accused before he is put on trial for the charge. There is no doubt that the generality of accused persons are justly accused. Persons who have committed grave offenses do not hesitate at subornation of perjury, and serviceable persons are seldom found wanting to counteract the evidence of the prosecution by false swearing.”
In quoting this language, we disclaim any imputation' of bad motives or evil design to either the defendant or his counsel in this case. We are dealing here with principles rather than persons.
Another argument advanced is, that the prosecuting attorney represents the public of which Rhoads is one, and that he acts in a semi-judicial capacity in discharging his duties, and that he should aid the defense when aid is needed. We agree that this officer should not endeavor to convict an innocent person, and he should not suppress or conceal evidence that might tend to acquit the prisoner. But that he should assist in the defense, we deny. The state furnishes counsel to indigent prisoners and pays them. The trial, when the issue is joined, is not a friendly recitation, but a real trial. No morbid sentiment or sympathy for one charged with crime should overshadow the rights of the public. In these days criminals are both skilled and cunning, and it is a contest between *425 the people and the criminals for the' mastery. Neither the rules of courtesy, or supposed equitable considerations should be allowed to subvert the practice sanctioned by long experience.
The state cannot compel the prisoner at the bar to submit his private papers or memoranda to the state for ■ use or even examination, for he cannot be required to testify- in the case, nor to furnish evidence against himself. Then why should the accused be allowed to rummage through the private papers of the prosecuting attorney? Neither the sublime teachings of the Golden Rule to which we have been referred, nor the supposed sense of fair play, can be so perverted as to sanction the demands allowed in this case.

The exceptions are sustained.

Summers, C. J.,- Crew, Spear, Davis and Shauck, JJ., concur.